# Exhibit A

Nick Russo, Esq.
Attorney ID No.: **449842024**
**MORGAN & MORGAN PHILADELPHIA, PLLC**
(a professional limited liability company formed in Florida)
30 Montgomery Street, Suite 410
Jersey City, New Jersey 07302
Tel. (201)209-3431
*Attorneys for Plaintiffs, K.H., a minor, by and through her Natural Father and Guardian ad Litem, KYLE HATCH, and KARINA TIMBERS*

| | |
|---|---|
| K.H., a minor, by and through her Natural Father and Guardian ad Litem, KYLE HATCH, and KARINA TIMBERS;<br><br>Plaintiffs,<br><br>vs.<br><br>AMAZON.COM, INC.; AMAZON.COM SERVICES, LLC; JOHN DOES 1-10 (fictional natural persons); and ABC CORPORATIONS 1-10 (fictional business entities),<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: CAMDEN COUNTY<br><br>DOCKET NO.:<br><br>Civil Action<br><br>**COMPLAINT; CERT. PURSUANT TO R. 4:5-1; DEMAND FOR JURY TRIAL; DESIGN. OF TRIAL COUNSEL; STATEMENT OF DAMAGES CLAIMED PURSUANT TO R. 4:5-2** |

Plaintiffs, K.H., a minor, by and through her Natural Father and Guardian Ad Litem, KYLE HATCH, and KARINA TIMBERS, bring this Complaint against Defendants Amazon.com, Inc. ("Amazon") and Amazon.com Services, LLC ("Amazon Services"), and allege as follows:

## INTRODUCTION

1. This is a products liability case which centers around a defective tabletop fire pit (hereinafter, the "Subject Tabletop Fire Pit") marketed, imported, distributed, sold, and/or supplied by Amazon and Amazon Services, that severely burned K.H. and Karina Timbers on June 1, 2025.

## PARTIES, JURISDICTION AND VENUE

2. At all times material hereto, Kyle Hatch was and is the natural father of the minor Plaintiff K.H.

3. Kyle Hatch serves as K.H.'s guardian ad litem pursuant to R. 4:26-2(b)(1) and is willing to act in that capacity.

4. At all times material hereto, Plaintiff, K.H., was and is a resident of Camden County, New Jersey.

5. At all times material hereto, Plaintiff, Karina Timbers, was and is a resident of Camden County, New Jersey.

6. At all times material hereto, Defendants JOHN DOES 1-10 (fictional natural persons); and ABC CORPORATIONS 1-10 (fictional business entities), are fictional Defendants designated as other natural persons and/or business entities responsible, individually and/or jointly or severally, or by their agents, servants, contractors/sub-contractors, and/or employees.

7. At all times material hereto, Defendant Amazon.com, Inc. ("Amazon") was and is a Delaware corporation with its principal place of business in Seattle, Washington. Amazon.com regularly conducts business in New Jersey, including by marketing, promoting, distributing, and selling products to residents of the State of New Jersey. Through these actions, Amazon cultivated a market for its products within New Jersey, and this cause of action directly arises out of its cultivation of the New Jersey marketplace in that Amazon imported, distributed, sold and shipped the Subject Tabletop Fire Pit in Camden County, New Jersey thereby subjecting itself to this Court's jurisdiction.

8. Amazon imports, advertises, markets, distributes, offers for sale, and sells consumer products, including tabletop fire pits and fire pits, like the Subject Tabletop Fire Pit, to New Jersey consumers through the Amazon.com website.

9. Jurisdiction is proper in this Court because Amazon does substantial business in New Jersey, the Subject Tabletop Fire Pit was sold to the consumer in Camden County, New Jersey, K.H. and Karina Timbers live in Camden County, New Jersey, the incident causing the bodily injuries to K.H. and Karina Timbers occurred in Camden County, New Jersey, and the action accrued in New Jersey.

10. At all times material hereto, Defendant Amazon.com Services, LLC ("Amazon Services") was and is a Delaware limited liability company with its principal place of business in Seattle, Washington. Amazon Services regularly conducts business in New Jersey, including by marketing, promoting, distributing, and selling products to residents of the State of New Jersey. Through these actions, Amazon Services cultivated a market for its products within New Jersey, and this cause of action directly arises out of its cultivation of the New Jersey marketplace in that Amazon Services imported, distributed, sold and shipped the Subject Tabletop Fire Pit in Camden County, New Jersey thereby subjecting itself to this Court's jurisdiction.

11. Amazon Services imports, advertises, markets, distributes, offers for sale, and sells consumer products, including tabletop fire pits and fire pits, like the Subject Tabletop Fire Pit, to New Jersey consumers, through the Amazon.com website.

12. Jurisdiction is proper in this Court because Amazon Services does substantial business in New Jersey, the Subject Tabletop Fire Pit was sold to the consumer in Camden County, New Jersey, K.H. and Karina Timbers live in Camden County, New Jersey, the incident causing

the K.H. and Karina Timbers bodily injuries occurred in Camden County, New Jersey, and the action accrued in New Jersey.

13. Venue is proper in this Court pursuant to N.J. Court Rule 4:3-2(a)(3).

**FACTUAL ALLEGATIONS**

14. At all times material hereto, Amazon and Amazon Services heavily portrayed themselves as safe and trustworthy companies.

15. At all times material hereto, Amazon and Amazon Services voluntarily undertook to provide a number of safety-related services for the benefit of individuals who purchase and use products purchased through the Amazon.com website. Amazon's and Amazon Services' purported goal in offering these services has been to fully vet the safety and reliability of not just the products being sold on the Amazon website, but also of the sellers. Amazon's and Amazon Services' affirmative representations of reliability and their sales-enhancing services were in place long before the Subject Tabletop Fire Pit was purchased, and they distinguished Amazon from other online marketplaces that acted as hands-off platforms. To the contrary, Amazon's and Amazon Services' actions established that they voluntarily undertook to act as a marketplace gatekeeper and regulator. Amazon and Amazon Services have held that role during all times relevant to Plaintiffs' incident.

16. For example, Amazon and Amazon Services provided extensive details on their voluntary undertaking in the following post made on their own website prior to Plaintiffs' incident:

> Amazon strives to be Earth's most customer-centric company, where people can find and discover the widest possible selection of safe and authentic goods, and we work hard to earn and maintain your trust. In 2018 alone, we invested over $400 million to protect our store and our customers and built robust programs to ensure products offered are safe, compliant, and authentic.
>
> Amazon offers customers hundreds of millions of items, and we have developed, and continuously refine and improve, our tools

that prevent suspicious, unsafe, or non-compliant products from being listed in our store.

Our proactive measures begin when a seller attempts to open an account. Our new seller account vetting includes a number of verifications and uses proprietary machine learning technology that stops bad actors before they can register or list a single product in our store. All products offered in our stores must comply with applicable laws and regulations, and our own policies. For example, we require toys to be tested to relevant safety standards set by the Consumer Product Safety Commission. We have a dedicated global team of compliance specialists that review submitted safety documentation, and we have additional qualification requirements that sellers must meet to offer products. In 2018, our teams and technologies proactively blocked more than three billion suspect listings for various forms of abuse, including non-compliance, before they were published to our store.

Once a product is available in our store, we continuously scan our product listings and updates to find products that might present a concern. Every few minutes, our tools review the hundreds of millions of products, scan the more than five billion attempted daily changes to product detail pages, and analyze the tens of millions of customer reviews that are submitted weekly for signs of a concern and investigate accordingly. Our tools use natural language processing and machine learning, which means new information is fed into our tools daily so they can learn and constantly get better at proactively blocking suspicious products.

In addition, we provide a number of ways for regulatory agencies, industry organizations, brands, customers, and our customer service teams to report safety issues. When we receive these reports, we move quickly to protect customers, remove unsafe products from our store, and investigate. For example, if a customer reports a concern with a product, a customer service associate can instantly trigger an investigation. Additionally, because of our direct relationships with customers, we are able to trace and directly notify customers who purchased a particular product online and alert them to a potential safety issue—our systems are far more effective than other online and offline retailers and customers can feel confident they'll have the information they need. […]

We invest significant resources to protect our customers and have built robust programs designed to ensure products offered for sale in our store are safe and compliant. We want customers to shop

> with confidence and if ever a customer has a concern, they can contact our customer service team, and we will investigate.[1]

17. For years, Amazon and Amazon Services have worked hard to create customer trust through their branding and marketing efforts.

18. Amazon and Amazon Services cultivate customer goodwill and trust in the safety and efficacy of the products they sell in many ways, including by:

a. Creating, operating, and promoting their "Product Safety Team" which "investigates and addresses reported safety complaints and incidents to ensure consumer protection from potential product-related safety risks." Indeed, Amazon specifically represents to consumers that its Product Safety Team tracks, logs, and investigates safety complaints and incidents, and takes remedial action when hazards are detected.[2]

b. Publicly proclaiming—on its "Preventing Unsafe Products in Our Store" webpage—that it "work[s] hard to ensure every product available in our store is safe" and that its teams and technology "detect and prevent product-safety risks."[3]

c. Providing a dedicated "Your Recalls and Product Safety Alerts" dashboard that lets customers identify recalls tied to their past orders and receive direct safety notifications.[4]

---

[1] Amazon.com, "Product Safety and Compliance In Our Store," available at https://www.aboutamazon.com/news/company-news/product-safety-and-compliance-in-our-store (Aug. 23, 2019).

[2] Amazon.com, "Recalls and Product Safety Alerts," available at https://www.amazon.com/product-safety-alerts?ref_=footer_bsx_ypsa.

[3] Amazon.com, "Preventing Unsafe Products in Our Stores," available at https://trustworthyshopping.aboutamazon.com/focus/product-safety

[4] Amazon.com, "Your Recalls and Product Safety Alerts," available at https://www.amazon.com/your-product-safety-alerts.

d. Requiring that manufacturers comply with Amazon's safety standards and requirements, including but not limited to those contained in Amazon's Supplier Quality Assurance Program Manual and Supply-Chain Standards Manual.

e. Reserving the right to mandate and approve "Amazon driven changes to product specifications that affect suppliers," and to reject or relabel any product that deviates from those specifications, thereby exercising design-level authority over the goods it allows into its supply chain.[5]

f. Controlling and resolving complaints made by consumers concerning the products sold on the Amazon website, apps, and other platforms, including by issuing refunds for products which are defective and pose a safety risk.

g. Reserving the right to require that third-party laboratory test reports that meet or exceed legal requirements be provided before a product can be sold on the Amazon website, apps, and other platforms.

19. By voluntarily adopting and publicizing these safety programs, policies, and regulatory commitments, Amazon and Amazon Services affirmatively undertook a duty to monitor the safety of products sold through their platform, to warn consumers of known hazards, and to remove or modify listings for dangerous products—thereby assuming responsibilities traditionally borne by manufacturers, distributors, and retailers.

20. In short: Amazon and Amazon Services know that the Amazon name and branding make consumers feel that the products purchased through their platform are safe, reputable, and built in accordance with industry standards. But, as described above, the reality is that the Subject

---

[5] Amazon.com, Supplier Quality Assurance Program Manual, available at https://supply.amazon.com/qap_manual/Amazon_Supplier_Quality_Assurance_Program_Manual(en-US).pdf?ref_=sc_gateway_footer_qapmanual_enUS.

Tabletop Fire Pit was designed and manufactured in a manner that was well below industry standards by utilizing a design known to be dangerous and to have caused injuries without employing any of the necessary safeguards to prevent or mitigate that known danger.

21. At all times material hereto, Amazon and Amazon Services were part of the chain of distribution for the subject tabletop fire pit.

22. On April 9, 2024, Nashonda Clark, the mother of Plaintiff K.H., purchased a Rozato Tabletop Fire Pit with s'mores maker kit (the "Subject Tabletop Fire Pit") from the Amazon website for use at her home in Cherry Hill, NJ (the "Incident Location") where she lived with, among others, Plaintiff K.H. The Amazon.com purchase order number for this purchase was XXX-XXXXXXX-9114641.

23. The Subject Tabletop Fire Pit was manufactured by a Chinese company.

24. On May 27, 2025, Ms. Clark also purchased a one liter bottle of Wilteexs Premium Ethanol Fuel from the Amazon website for use with the Subject Tabletop Fire Pit (the "Subject Wilteexs Fuel Bottle"). The Amazon.com purchase order number for this purchase was XXX-XXXXXXX-9985802.

25. The Amazon website identified the Wilteexs product as "Bio Ethanol Fuel for Table Top Fire Pit & Ethanol Fireplaces."

26. The Subject Wilteexs Fuel Bottle was manufactured by a Chinese company.

27. On June 1, 2025, Plaintiff K.H. and other minors were attempting to roast marshmallows for s'mores using the Subject Tabletop Fire Pit at the Incident Location.

28. Ms. Clark originally lit the Subject Tabletop Fire Pit using the Subject Wilteexs Fuel Bottle as recommended by Defendants.

29. The Subject Tabletop Fire Pit burned for a period of time until the flame dissipated and the minors using the Subject Tabletop Fire Pit, including K.H., were no longer able to roast marshmallows.

30. When the flame dissipated, an adult friend of Ms. Clark, Duane Jones, attempted to add more of the fuel from the Subject Wilteexs Fuel Bottle to the Subject Tabletop Fire Pit.

31. When Mr. Jones added additional Wilteexs fuel to the Subject Tabletop Fire Pit, a sudden and violent flash fire occurred, engulfing the minor Plaintiff K.H. in flames and burning Plaintiff Karina Timbers (the "Subject Incident").

32. At the time of the Subject Incident, minor Plaintiff K.H. was a bystander observing Mr. Jones' attempt to re-fuel the Subject Tabletop Fire Pit.

33. At the time of the Subject Incident, Karina Timbers was a bystander socializing with guests at the Incident Location with her back turned to the Subject Tabletop Fire Pit.

34. The minor Plaintiff K.H. was transported to St. Christopher's Hospital for Children where she was admitted from June 1, 2025 to July 4, 2025.

35. Since the Subject Incident, the minor Plaintiff K.H. has continued to suffer from injuries caused by the Subject Tabletop Fire Pit, including but not limited to, additional surgeries, significant and permanent scarring, disfigurement, pain, and mobility impairments.

36. Upon information and belief, Plaintiff K.H. has incurred past medical bills as a result of the Subject Incident in excess of $2,000,000.00.

37. Plaintiff Karina Timbers was transported to Jefferson Hospital where she received treatment for severe burn injuries to her back and was admitted from June 1, 2025 to June 12, 2025.

38. Since the Subject Incident, Plaintiff Timbers has continued to suffer from injuries caused by the Subject Tabletop Fire Pit, including but not limited to, significant and permanent scarring, disfigurement, pain, and mobility impairments.

39. The Cherry Hill Fire Department and Cherry Hill Police Department investigated the Subject Incident.

40. The Cherry Hill Fire Department and Cherry Hill Police Department concluded that the cause of the Subject Incident was likely a phenomenon called flame jetting.

41. The Cherry Hill Fire Department specifically noted that the Subject Wilteexs Fuel Bottle did not have a flame arrestor (i.e., a protective mesh screen) which "allowed the phenomenon of flame jetting to occur during the refueling process."

42. The minor Plaintiff K.H. and Karina Timbers were likely the victims of flame jetting.

43. Flame jetting can occur during the refueling of an appliance when that appliance is not fully extinguished, and the flame is not readily visible.

44. The United States Consumer Product Safety Commission ("CPSC") defines "flame jetting" as follows: "[f]lame jetting is a phenomenon where an external ignition source – such as an open flame – causes a sudden ignition of fuel within a container and forcefully expels burning vapor and liquid from the mouth of the container, resulting in a blowtorch-like effect,"[6] and can cause nearby flammable objects to catch fire.

[6] *See* United States Consumer Product Safety Commission, "CPSC Requires Lifesaving Flame Mitigation Devices on Gas Cans and Other Portable Fuel Containers" (Jan. 17, 2023), available at https://www.cpsc.gov/Newsroom/News-Releases/2023/CPSC-Requires-Lifesaving-Flame-Mitigation-Devices-on-Gas-Cans-and-Other-Portable-Fuel-Containers (accessed November 22, 2024).

45. A flame jetting occurrence is unexpected and occurs in a fraction of a second, making it impossible for the user and/or bystander to react quickly enough to move away from a flame jet, resulting in serious injuries and even fatalities.[7]

46. As early as 2019, dangers associated with fire pits and pourable fuels were known.[8]

47. A "flame arrestor" is an important and necessary mitigation device. The very purpose of a flame arrestor is to prevent flame jetting.[9]

48. Flame arrestors resemble a screen that is built into a container's opening, allowing liquid to flow out while at the same time reducing the chance that a flame can travel into and/or near the container and cause flame-jetting.[10]

49. By at least 2019, it was known in the industry that fuel containers without flame arrestors should not be utilized to refuel fire pits.[11]

50. Despite this knowledge, Defendants sold and distributed the subject tabletop fire pit without any warnings or instructions against the use of fuel containers lacking flame arrestors.

---

[7] *Id.*
[8] *See*, e.g. Health Canada Information Update "Health Canada warns Canadians of health and safety risks of certain containers of pourable alcohol-based fuels and certain fire pots that use pourable fuels (Oct. 9, 2019), https://recalls-rappels.canada.ca/en/alert-recall/health-canada-warns-canadians-health-and-safety-risks-certain-containers-pourable (accessed November 22, 2024).
[9] *See* CPSC Request Lifesaving Flame Mitigation Devices on Gas Cans and Other Portable Fuel Containers (Jan. 17, 2023), https://www.cpsc.gov/Newsroom/News-Releases/2023/CPSC-Requires-Lifesaving-Flame-Mitigation-Devices-on-Gas-Cans-and-Other-Portable-Fuel-Containers (accessed December 1, 2024).
[10] *Id.*
[11] *See*, e.g. Health Canada Information Update "Health Canada warns Canadians of health and safety risks of certain containers of pourable alcohol-based fuels and certain fire pots that use pourable fuels (Oct. 9, 2019), https://recalls-rappels.canada.ca/en/alert-recall/health-canada-warns-canadians-health-and-safety-risks-certain-containers-pourable (accessed November 22, 2024).

51. Despite this knowledge, Defendants sold and distributed the Subject Wilteexs Fuel Bottle without a flame arrestor.

52. Despite this knowledge and the lack of a flame arrestor on the Subject Wilteexs Fuel Bottle, rather than warn against the use of the Subject Wilteexs Fuel Bottle with tabletop fire pits, Defendants marketed the Subject Wilteexs Fuel Bottle as bioethanol fuel to be used with tabletop fire pits and fireplaces.

53. At the time that they were sold, distributed, and used, neither the Subject Tabletop Fire Pit, the Subject Wilteexs Fuel Bottle, nor the Amazon sales pages contained sufficient warnings or instructions that the fuel should only be poured from containers or canisters with flame arrestors.

54. At the time of the purchase of the Subject Tabletop Fire Pit, neither the Subject Tabletop Fire Pit, the Subject Wilteexs Fuel Bottle, nor the Amazon sales pages contained sufficient warnings or instructions that, because the fuel produces flames that may not be readily visible, it is difficult, if not impossible, to see if a flame is fully extinguished, which increases the risk of flame jetting.

55. At the time of purchase, neither the Subject Tabletop Fire Pit, Subject Wilteexs Fuel Bottle, nor the Amazon sales pages contained sufficient warnings of the risk of flame jetting.

56. Amazon and Amazon Services were well aware, prior to the sale of the subject tabletop fire pit and the Subject Wilteexs Fuel Bottle of the dangers posed by tabletop fire pits and bioethanol fuel without the necessary safety devices as described above. This knowledge came from a variety of sources, including many complaints and reports of real-world incidents and injuries caused by tabletop fire pits. Indeed, Amazon had conducted and/or was otherwise aware of recalls of other tabletop fire pits and bioethanol fuels for this exact hazard, including, but not

limited to, the recall of Colsen-branded fire pits due to the risk of flame jetting and warning to stop using FLIKRFIRE tabletop fireplaces due to flame jetting.

57. On December 19, 2024, approximately six months **before** the Subject Incident, the CPSC issued a Consumer Alert which provided as follows: "Fire pits that require consumers to pour isopropyl (rubbing) alcohol or other liquid fuel into an open container or bowl and then ignite the pooled liquid in the same location it was poured violate the requirements in voluntary safety standard ASTM F3363-19. Flame jetting, a second hazard, can occur when refilling alcohol or other liquid-burning fire pits if any flame is present . . . **Sellers should stop selling these products**." (emphasis supplied).[12]

58. The December 19, 2024 CPSC Consumer Alert came with a video portraying the phenomenon of flame jetting.[13]

59. Despite this knowledge and these explicit warnings, Defendants offered the Subject Tabletop Fire Pit and the Subject Wilteexs Fuel Bottle for sale in April and May 2025.

60. At no point in time before the Subject Incident did Amazon or Amazon Services perform a "trace and directly notify [Plaintiff] . . . to a potential safety issue" with the Subject Tabletop Fire Pit or Subject Wilteexs Fuel Bottle.

61. After the Subject Incident, the Subject Wilteexs Fuel Bottle was recalled.

---

[12] CPSC Consumer Alert: Stop Using Alcohol or Other Liquid-Burning Fire Pits That Violate Voluntary Standards and Present Flame Jetting and Fire Hazards; Two Deaths and Dozens of Serious Burn Injuries Reported (Dec. 19, 2024), https://www.cpsc.gov/Warnings/2025/Consumer-Alert-Stop-Using-Alcohol-or-Other-Liquid-Burning-Fire-Pits-That-Violate-Voluntary-Standards-and-Present-Flame-Jetting-and-Fire-Hazards-Two-Deaths-and-Dozens-of-Serious-Burn-Injuries-Reported (accessed July 28, 2026).
[13] https://www.youtube.com/shorts/dW1y0UF_zLg

62. After the Subject Incident, the CPSC issued a consumer warning to stop using the Subject Tabletop Fire Pit.

**COUNT I**
**N.J.S.A. § 2A:58C-2(c)—DESIGN DEFECT (SUBJECT TABLETOP FIRE PIT)**

63. Plaintiffs incorporate by reference paragraphs 1 – 62, as if fully set forth herein.

64. At all times material hereto, Amazon and Amazon Services were engaged in the business of selling, importing, marketing, designing, distributing, labeling, packaging and/or supplying tabletop fire pits, including the Subject Tabletop Fire Pit.

65. At all times material hereto, Amazon and Amazon Services exercised some significant control over the design, packaging or labeling of the Subject Tabletop Fire Pit relative to the defects in the product alleged herein which caused the injuries to Plaintiffs.

66. At all times material hereto, Amazon and Amazon Services knew or should have known, based on public reporting and other facts in their possession, that the Subject Tabletop Fire Pit was defective in its design.

67. Amazon and Amazon Services placed the Subject Tabletop Fire Pit on the market with knowledge that it would be used without inspection for defects and dangers. Amazon and Amazon Services knew or should have known that ultimate users, consumers or bystanders would not and could not properly inspect this product for defects and dangerous conditions, and that the detection of such defects and dangers would be beyond the capabilities of such people.

68. At all times relevant hereto, the Subject Tabletop Fire Pit was intended to be used on tables, patios, balconies, decks, and other locations in and around the home where adults and children would foreseeably be present.

69. At all times relevant hereto, the Subject Tabletop Fire Pit was intended to be used for roasting marshmallows and for use with other foodstuffs.

70. At all times material hereto, Amazon and Amazon Services knew, or reasonably should have known, of the Subject Tabletop Fire Pit's risks and dangers of flame jetting and other instances of injuries caused by ignited fuel.

71. At all times material hereto, Amazon and Amazon Services knew or should have known that, even when used in a reasonable and foreseeable manner, a tabletop fire pit, like the Subject Tabletop Fire Pit, presents a foreseeable and unreasonable risk of severe burn injury, especially where the product uses liquid fuel, creates hard-to-see flames, permits flame jetting, lacks adequate flame containment, or remains deceptively hot after use.

72. At all times material hereto, Amazon and Amazon Services knew or reasonably should have known that minor children are particularly vulnerable to the hazards posed by tabletop fire pits because children cannot appreciate the danger to the same extent as adults, are naturally attracted to fire and illuminated objects, and may come into contact with exposed flames, heated surfaces, spilled fuel, or sudden flare-ups through no fault of their own.

73. At all times material hereto, Amazon and Amazon Services knew, or reasonably should have known, that users refuel their tabletop fire pits, including the Subject Tabletop Fire Pit, with bio-ethanol fuel, once it appears the fire has dissipated but when the fire may not be completely extinguished or when the fire pit may still be hot, as occurred here. This scenario greatly increases the risk of flame jetting if the fire pit is refueled at that time.

74. At all times material hereto, Amazon and Amazon Services knew, or reasonably should have known, that refueling a "smokeless" and "odorless" fire pit, including the Subject Tabletop Fire Pit, with bio-ethanol fuel is dangerous and can lead to flame jetting, burning users and bystanders.

75. At all times material hereto, Amazon and Amazon Services knew, or reasonably should have known, of the dangers associated with refueling a fire pit from fuel canisters without flame arrestors or without some other mechanism to eliminate the risk of flame jetting, explosion, an abnormal projection of flames, and/or ignited fuel outside the product's intended burn zone.

76. At all times material hereto, Amazon and Amazon Services knew, or reasonably should have known, that designing, manufacturing, selling, importing, distributing, marketing, labeling, and/or supplying a tabletop fire pit, like the Subject Tabletop Fire Pit, without some mechanisms to eliminate the risk of flame jetting, explosion, abnormal projection of flames, and/or ignited fuel outside the product's intended burn zone is dangerous and can lead to users and bystanders suffering burn injuries.

77. At all times material hereto, the Subject Tabletop Fire Pit was defective and unreasonably dangerous to ultimate users when imported, distributed, marketed, labeled, and sold by Amazon and Amazon Services, for at least one of the following reasons:

a. It exposed users, including foreseeable child bystanders, to open and inadequately guarded flame at table height within easy reach of a child;

b. It lacked adequate physical safeguards, including but not limited to stable containment, flame barriers or guards, child-resistant safety features, anti-tip protection, spill-resistant fuel control, and other feasible protective measures that would have reduced or prevented the risk of catastrophic burns.

c. It permitted unsafe fueling and/or refueling conditions, including the risk that liquid fuel could ignite unexpectedly, flash, flare, spill, or jet outward during ordinary and foreseeable use or misuse.

d. Safer reasonable alternative designs existed at the time it left Amazon's and Amazon Services' control, including designs that eliminated pooled liquid fuel, reduced flame instability, increased separation between users and flame, improved shielding, improved base stability, reduced tip-over and spill risk, and incorporated child-resistant or child-deterrent features.

e. It had one or more poorly designed components that created an unreasonable risk of harm that was unknown to and could not have been known by users and bystanders.

f. It was designed without safety features to prevent flame jetting, abnormal projection of flames and/or explosions during refueling.

g. It was designed as "smokeless" and "odorless," which causes a reasonable user to be unaware that the fire is still burning and increases the risk that a reasonable user will re-fuel in unsafe conditions.

h. It was designed to have fuel poured directly into its open design, including while still potentially hot or lit.

i. It was designed to be used with fuel that was sold without flame arrestors or other defensive mechanisms.

j. It was not reasonably suited for its intended use of providing a safe fire.

k. It did not perform as safely as an ordinary consumer would expect when used as intended and/or used in a manner reasonably foreseeable by the manufacturer, seller, distributor, and supplier.

l. It was not merchantable.

m. The risk of danger in the design of the Subject Tabletop Fire Pit far outweighed its benefits.

78. The magnitude of the danger posed by the Subject Tabletop Fire Pit outweighed any utility of the challenged design, particularly given the availability of safer alternative designs and the product's placement in common family settings where children are foreseeably present.

79. The risk of severe burn injury to a minor child from contact with flames, superheated surfaces, spilled burning fuel, sudden flare-up, or flame projection was reasonably foreseeable to Amazon and Amazon Services before the Subject Incident.

80. Despite that foreseeable danger, Amazon and Amazon Services placed the Subject Tabletop Fire Pit into the stream of commerce in a condition unreasonably dangerous to users and foreseeable bystanders.

81. At the time of this incident, the Subject Tabletop Fire Pit was used as expected and intended, and without substantial change affecting the unreasonably dangerous conditions of the product.

82. The Subject Tabletop Fire Pit was unreasonably dangerous because Amazon and Amazon Services intended it to be safe to use and refuel.

83. Had the Subject Tabletop Fire Pit been as safe as Amazon and Amazon Services intended, flame-jetting would not have occurred.

84. On June 1, 2025, the Subject Tabletop Fire Pit was substantially unchanged from its condition when sold and distributed by Amazon and Amazon Services.

85. For the reasons set forth above, the Subject Tabletop Fire Pit was unreasonably dangerous to foreseeable users at the time Amazon and Amazon Services released it into the stream of commerce.

86. At the time of the Subject Incident, the Subject Tabletop Fire Pit was being used in an ordinary and foreseeable manner.

87. The defects described above directly and proximately caused the injuries suffered by the Plaintiffs in that they produced or contributed substantially to Plaintiffs' injuries.

88. As a direct and proximate result of the foregoing defects, the Plaintiffs each sustained damages of a permanent and continuing nature, including past and future medical expenses, pain and suffering, scarring, disability, mental anguish, loss of the capacity for the enjoyment of life, expense of hospitalization, and medical and nursing care and treatment. These injuries are permanent and will continue into the future.

WHEREFORE, Plaintiffs demand judgment against Defendants Amazon and Amazon Services for compensatory damages, costs, interest as allowed by law, and for such other relief as the Court deems just and demands a trial by jury on all issues so triable as a matter of right.

**COUNT II**
**N.J.S.A. § 2A:58C-2(c)—DESIGN DEFECT (SUBJECT WILTEEX FUEL BOTTLE)**

89. Plaintiffs incorporate by reference paragraphs 1 – 88, as if fully set forth herein.

90. At all times material hereto, Amazon and Amazon Services were engaged in the business of selling, importing, marketing, designing, distributing, labeling, packaging and/or supplying bio-ethanol fuel for use with tabletop fire pits, including the Subject Wilteexs Fuel Bottle.

91. At all times material hereto, Amazon and Amazon Services exercised some significant control over the design, packaging or labeling of the Subject Wilteexs Fuel Bottle relative to the defects in the product alleged herein which caused the injuries to Plaintiffs.

92. At all times material hereto, Amazon and Amazon Services knew or should have known, based on public reporting and other facts in its possession, that the Subject Wilteexs Fuel Bottle was defective in its design.

93. Amazon and Amazon Services placed the Subject Wilteexs Fuel Bottle on the market with knowledge that it would be used without inspection for defects and dangers. Amazon and Amazon Services knew or should have known that ultimate users, consumers or bystanders would not and could not properly inspect this product for defects and dangerous conditions, and that the detection of such defects and dangers would be beyond the capabilities of such people.

94. At all times material hereto, Amazon and Amazon Services knew, or reasonably should have known, of the Subject Wilteexs Fuel Bottle's risks and dangers of flame jetting and other instances of injuries caused by ignited fuel.

95. At all times material hereto, Amazon and Amazon Services knew or should have known that, even when used in a reasonable and foreseeable manner, the Subject Wilteexs Fuel Bottle presented a foreseeable and unreasonable risk of severe burn injury, especially where the product was used with hard-to-see flames, permitted flame jetting, or lacked adequate flame mitigation.

96. At all times material hereto, Amazon and Amazon Services knew or should have known that the Subject Wilteexs Fuel Bottle would be used with tabletop fire pits, like the Subject Tabletop Fire Pit.

97. At all times material hereto, Amazon and Amazon Services knew or reasonably should have known that minor children are particularly vulnerable to the hazards posed by tabletop fire pits because children cannot appreciate the danger to the same extent as adults, are naturally attracted to fire and illuminated objects, and may come into contact with exposed flames, heated surfaces, spilled fuel, or sudden flare-ups through no fault of their own.

98. At all times material hereto, Amazon and Amazon Services knew, or reasonably should have known, that users refuel their tabletop fire pits, including the Subject Tabletop Fire Pit, with bio-ethanol fuel, once it appears the fire has dissipated but when the fire may not be completely extinguished or when the fire pit may still be hot, like what happened here. This scenario greatly increases the risk of flame jetting if the fire pit is refueled at that time.

99. At all times material hereto, Amazon and Amazon Services knew or reasonably should have known, that refueling a "smokeless" and "odorless" fire pit, with bio-ethanol fuel,

such as the Subject Wilteexs Fuel Bottle, is dangerous and can lead to flame jetting, burning users and bystanders.

100. At all times material hereto, Amazon and Amazon Services knew, or reasonably should have known, of the dangers associated with refueling a fire pit from fuel canisters, like the Subject Wilteexs Fuel Bottle, without flame arrestors or without some other mechanism to eliminate the risk of flame jetting, explosion, an abnormal projection of flames, and/or ignited fuel outside the product's intended burn zone.

101. At all times material hereto, Amazon and Amazon Services knew, or reasonably should have known, that designing, manufacturing, selling, importing, distributing, marketing, labeling, and/or supplying bio-ethanol fuel for use with a tabletop fire pit, like the Subject Wilteexs Fuel Bottle, without some mechanisms to eliminate the risk of flame jetting, explosion, abnormal projection of flames, and/or ignited fuel outside the product's intended burn zone is dangerous and can lead to users and bystanders suffering burn injuries.

102. At all times material hereto, the Subject Wilteexs Fuel Bottle was defective and unreasonably dangerous to ultimate users when imported, distributed, marketed, labeled, and sold by Amazon and Amazon Services, for at least one of the following reasons:

a. It lacked a flame arrestor or other similar flame mitigation device intended to prevent, or substantially reduce the risk of, flame jetting, flare-ups, flash fires, and other similar events.

b. It permitted unsafe fueling and/or refueling conditions, including the risk that liquid fuel could ignite unexpectedly, flash, flare, spill, or jet outward during ordinary and foreseeable use or misuse.

c. Safer reasonable alternative designs existed at the time it left Amazon's and Amazon Services' control, including designs that incorporated flame arrestors or other similar flame mitigation devices.

d. It had one or more poorly designed components that created an unreasonable risk of harm that was unknown to and could not have been known by users and bystanders.

e. It was designed without safety features to prevent flame jetting, abnormal projection of flames and/or explosions during refueling.

f. It was designed to be used with fire pits marketed as "smokeless" and "odorless," which causes a reasonable user to be unaware that the fire is still burning and increases the risk that a reasonable user will re-fuel using the Subject Wilteexs Fuel Bottle in unsafe conditions.

g. It was not reasonably suited for its intended use of safely providing fuel for a tabletop fire pit.

h. It did not perform as safely as an ordinary consumer would expect when used as intended and/or used in a manner reasonably foreseeable by the manufacturer, seller, distributor, and supplier.

i. It was not merchantable.

j. The risk of danger in the design of the Subject Wilteexs Fuel Bottle far outweighed its benefits.

103. The magnitude of the danger posed by the Subject Wilteexs Fuel Bottle outweighed any utility of the challenged design, particularly given the availability of safer alternative designs and the product's use in common family settings where children are foreseeably present.

104. The risk of severe burn injury to a minor child from contact with flames, superheated surfaces, spilled burning fuel, sudden flare-up, or flame projection was reasonably foreseeable to Amazon and Amazon Services before the Subject Incident.

105. Despite that foreseeable danger, Amazon and Amazon Services placed the Subject Wilteexs Fuel Bottle into the stream of commerce in a condition unreasonably dangerous to users and foreseeable bystanders.

106. At the time of this incident, the Subject Wilteexs Fuel Bottle was used as expected and intended, and without substantial change affecting the unreasonably dangerous conditions of the product.

107. The Subject Wilteexs Fuel Bottle was unreasonably dangerous because Amazon and Amazon Services intended it to be safe to use with a tabletop fire pit.

108. Had the Subject Wilteexs Fuel Bottle been as safe as Amazon and Amazon Services intended, flame jetting would not have occurred.

109. On June 1, 2025, the Subject Wilteexs Fuel Bottle was substantially unchanged from its condition when sold and distributed by Amazon and Amazon Services.

110. For the reasons set forth above, the Subject Wilteexs Fuel Bottle was unreasonably dangerous to foreseeable users at the time Amazon and Amazon Services released it into the stream of commerce.

111. At the time of the Subject Incident, the Subject Wilteexs Fuel Bottle was being used in an ordinary and foreseeable manner.

112. The defects described above directly and proximately caused the injuries suffered by the Plaintiffs in that they produced or contributed substantially to Plaintiffs' injuries.

113. As a direct and proximate result of the foregoing defects, the Plaintiffs each sustained damages of a permanent and continuing nature, including past and future medical expenses, pain and suffering, scarring, disability, mental anguish, loss of the capacity for the enjoyment of life, expense of hospitalization, and medical and nursing care and treatment and suffering. These injuries are permanent and will continue into the future.

WHEREFORE, Plaintiffs demand judgment against Defendants Amazon and Amazon Services for compensatory damages, costs, interest as allowed by law, and for such other relief as the Court deems just and demands a trial by jury on all issues so triable as a matter of right.

**COUNT III**
**N.J.S.A. § 2A:58C-2(b)—FAILURE TO WARN (SUBJECT TABLETOP FIRE PIT)**

114. Plaintiffs incorporate by reference paragraphs 1 – 113, as if fully set forth herein.

115. At all times material hereto, Amazon and Amazon Services were engaged in the business of selling, importing, marketing, designing, distributing, labeling, packaging and/or supplying tabletop fire pits, including the Subject Tabletop Fire Pit.

116. At all times material hereto, Amazon and Amazon Services exercised some significant control over the design, packaging or labeling of the Subject Tabletop Fire Pit relative to the defects in the product alleged herein which caused the injuries to Plaintiffs.

117. At all times material hereto, Amazon and Amazon Services knew or should have known, based on public reporting and other facts in its possession, that the Subject Tabletop Fire Pit was defective in its warnings.

118. Amazon and Amazon Services knew or should have known that the Subject Tabletop Fire Pit posed various risks, including a known and unreasonable risk of severe burn injuries caused by flame jetting, sudden ignition, flashback, uncontrolled flame propagation, and/or explosion, particularly during ignition, refueling, or use in close proximity to users.

119. Amazon and Amazon Services knew or should have known that such risks were not readily apparent to ordinary consumers and presented a heightened danger to minor children, like the minor Plaintiff, K.H., who lack the capacity to appreciate such hazards.

120. At the time the Subject Tabletop Fire Pit left Amazon's and Amazon Services' possession, the Subject Tabletop Fire Pit was defective and unreasonably dangerous because it lacked adequate warnings and instructions concerning the risk of flame jetting, flash fire, fire spreading and severe burn injury to children and other nearby bystanders.

121. The Subject Tabletop Fire Pit required consumers to pour and ignite liquid fuel in a manner that created a risk of sudden ignition, violent flare-up, and propagation of burning liquid beyond the tabletop fire pit itself.

122. This danger was not obvious to ordinary consumers as alcohol flames can be difficult or impossible to see, and consumers may reasonably believe the flame is extinguished when hot surfaces or residual flame remain present.

123. The Subject Tabletop Fire Pit did not adequately warn consumers that refilling the fire pit while any flame, ember, or hot surface remained could ignite fuel vapors and cause flames to shoot back into the fuel stream or container.

124. The Subject Tabletop Fire Pit did not adequately warn consumers that the fuel could ignite suddenly, spread outside the reservoir, or cause catastrophic burn injuries in less than a second.

125. At the time the product left Amazon's and Amazon Services' control, feasible warnings and instructions could have reduced or avoided the risk by clearly instructing consumers not to refill while hot, not to use certain fuels, not to ignite pooled fuel in an open reservoir, and to discontinue use entirely because of the severity of the hazard.

126. Amazon and Amazon Services failed to adequately warn that the subject product posed a heightened danger when used in family settings where children could easily access the tabletop surface or surrounding area.

127. Amazon and Amazon Services failed to adequately warn that the tabletop fire pits, including the Subject Tabletop Fire Pit, should be kept out of reach of children and should not be used in environments where a child could come into contact with the product.

128. Amazon and Amazon Services failed to adequately warn of the risk of sudden flare-up, flame jetting, flame extension, reignition, spill ignition, or other combustion-related hazards during lighting, use, or refueling.

129. Amazon and Amazon Services failed to provide adequate warnings regarding the danger that fuel, vapor, or residual combustion conditions could cause unexpected ignition or intensification of flame.

130. Amazon and Amazon Services failed to warn that refueling a warm or recently extinguished tabletop fire pit could result in ignition, flashback, or flame jetting.

131. Amazon and Amazon Services failed to warn that spilled liquid fuel could ignite and spread fire beyond the container.

132. Amazon and Amazon Services failed to warn that fuel vapors could ignite unexpectedly and cause rapid burn injuries to people nearby, including children.

133. Amazon and Amazon Services failed to warn that the Subject Tabletop Fire Pit should not be fueled or refueled with bio-ethanol fuel from a bottle that lacked a flame arrestor or other similar flame mitigation device.

134. Amazon and Amazon Services failed to provide warnings in a manner reasonably calculated to reach the ordinary user, including prominent, clear, and conspicuous on-product warnings and instructions sufficient to communicate the seriousness of the danger.

135. Without question, feasible warnings and instructions existed that could have reduced or avoided the dangers described above without impairing the Subject Tabletop Fire Pit's intended function.

136. Such warnings and instructions could have reduced or avoided the risk by clearly instructing consumers not to refill while hot due to the possibility of invisible alcohol flames, fuel-vapor ignition, and flame jetting.

137. The provision of adequate warnings and instructions would have prevented or materially reduced the risk of the injuries sustained by the Plaintiffs.

138. As a direct and proximate result of the warning, instruction, and informational defects in the Subject Tabletop Fire Pit, the product emitted flames in an uncontrolled and dangerous manner and caused serious bodily injury to Plaintiffs.

139. The defects described above directly and proximately caused the injuries suffered by the Plaintiffs in that they produced or contributed substantially to Plaintiffs' injuries.

140. As a direct and proximate result of the foregoing defects, the Plaintiffs each sustained damages of a permanent and continuing nature, including past and future medical expenses, pain and suffering, disability, scarring, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, and medical and nursing care and treatment. These injuries are permanent and will continue into the future.

WHEREFORE, Plaintiffs demand judgment against Amazon and Amazon Services for compensatory damages, costs, interest as allowed by law, and for such other relief as the Court deems just and demands a trial by jury on all issues so triable as a matter of right.

## COUNT IV
## N.J.S.A. § 2A:58C-2(b)—FAILURE TO WARN (SUBJECT WILTEEXS FUEL BOTTLE)

141. Plaintiffs incorporate by reference paragraphs 1 – 140, as if fully set forth herein.

142. At all times material hereto, Amazon and Amazon Services were engaged in the business of selling, importing, marketing, designing, distributing, labeling, packaging and/or supplying bio-ethanol fuel for use with tabletop fire pits, including the Subject Wilteexs Fuel Bottle.

143. At all times material hereto, Amazon and Amazon Services exercised some significant control over the design, packaging or labeling of the Subject Wilteexs Fuel Bottle relative to the defects in the product alleged herein which caused the injuries to Plaintiffs.

144. At all times material hereto, Amazon and Amazon Services knew or should have known, based on public reporting and other facts in its possession, that the Subject Wilteexs Fuel Bottle was defective in its warnings.

145. Amazon and Amazon Services knew or should have known that the Subject Wilteexs Fuel Bottle posed various risks, including a known and unreasonable risk of severe burn injuries caused by flame jetting, sudden ignition, flashback, uncontrolled flame propagation, and/or explosion, particularly during ignition, refueling, or use in close proximity to users.

146. Amazon and Amazon Services knew or should have known that such risks were not readily apparent to ordinary consumers and presented a heightened danger to minor children, like the minor Plaintiff, K.H., who lack the capacity to appreciate such hazards.

147. At the time the Subject Wilteexs Fuel Bottle left Amazon's and Amazon Services' possession, the Subject Wilteexs Fuel Bottle was defective and unreasonably dangerous because it lacked adequate warnings and instructions concerning the risk of flame jetting, flash fire, fire spreading and severe burn injury to children and other nearby bystanders.

148. The Subject Wilteexs Fuel Bottle was marketed, packaged, labeled, and sold with the express purpose of consumers using it as fuel for tabletop fire pits.

149. The Subject Wilteexs Fuel Bottle did not adequately warn consumers that refilling a tabletop fire pit with the Subject Wilteexs Fuel Bottle while any flame, ember, or hot surface remained could ignite fuel vapors and cause flames to shoot back into the fuel stream or container.

150. The Subject Wilteexs Fuel Bottle did not adequately warn consumers that the fuel could ignite suddenly, spread outside the reservoir, or cause catastrophic burn injuries in less than a second.

151. At the time the Subject Wilteexs Fuel Bottle left Amazon's and Amazon Services' control, feasible warnings and instructions could have reduced or avoided the risk by clearly instructing consumers not to use the Subject Wilteexs Fuel Bottle without a flame arrestor or other similar flame mitigation device, to discontinue use entirely because of the severity of the hazard.

152. Amazon and Amazon Services failed to adequately warn that the Subject Wilteexs Fuel Bottle posed a heightened danger when used in family settings where children could easily access the tabletop surface or surrounding area.

153. Amazon and Amazon Services failed to adequately warn of the risk of sudden flare-up, flame jetting, flame extension, reignition, spill ignition, or other combustion-related hazards during lighting, use, or refueling.

154. Amazon and Amazon Services failed to provide adequate warnings regarding the danger that fuel, vapor, or residual combustion conditions could cause unexpected ignition or intensification of flame.

155. Amazon and Amazon Services failed to warn that using the Subject Wilteexs Fuel Bottle to refuel a warm or recently extinguished tabletop fire pit could result in ignition, flashback, or flame jetting.

156. Amazon and Amazon Services failed to warn that spilled liquid fuel could ignite and spread fire beyond the container.

157. Amazon and Amazon Services failed to warn that fuel vapors could ignite unexpectedly and cause rapid burn injuries to people nearby, including children.

158. Amazon and Amazon Services failed to warn that a tabletop fire pit should not be fueled or refueled with bio-ethanol fuel from a bottle that lacked a flame arrestor or other similar flame mitigation device, such as the Subject Wilteexs Fuel Bottle.

159. Indeed, rather than warn that bio-ethanol fuel bottles without a flame arrestor or other similar flame mitigation device, such as the Subject Wilteexs Fuel Bottle, should not be used with tabletop fire pits, Amazon and Amazon Services marketed, packaged, labeled, and sold the Subject Wilteexs Fuel Bottle with the express purpose of consumers using it as fuel for tabletop fire pits.

160. Amazon and Amazon Services failed to provide warnings in a manner reasonably calculated to reach the ordinary user, including prominent, clear, and conspicuous on-product warnings and instructions sufficient to communicate the seriousness of the danger.

161. Without question, feasible warnings and instructions existed that could have reduced or avoided the dangers described above without impairing the Subject Wilteexs Fuel Bottle's intended function.

162. Such warnings and instructions could have reduced or avoided the risk by clearly instructing consumers not to use without a flame arrestor or other similar flame mitigation device due to the possibility of invisible alcohol flames, fuel-vapor ignition, and flame jetting.

163. The provision of adequate warnings and instructions would have prevented or materially reduced the risk of the injuries sustained by the Plaintiffs.

164. As a direct and proximate result of the warning, instruction, and informational defects in the Subject Tabletop Fire Pit, the product emitted flames in an uncontrolled and dangerous manner and caused serious bodily injury to Plaintiffs.

165. The defects described above directly and proximately caused the injuries suffered by the Plaintiffs in that they produced or contributed substantially to Plaintiffs' injuries.

166. As a direct and proximate result of the foregoing defects, the Plaintiffs each sustained damages of a permanent and continuing nature, including past and future medical expenses, pain and suffering, disability, scarring, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, and medical and nursing care and treatment. These injuries are permanent and will continue into the future.

WHEREFORE, Plaintiffs demand judgment against Amazon and Amazon Services for compensatory damages, costs, interest as allowed by law, and for such other relief as the Court deems just and demands a trial by jury on all issues so triable as a matter of right.

## COUNT V
## JOHN DOES AND ABC CORPORATIONS

167. Plaintiffs incorporate by reference paragraphs 1 – 166, as if fully set forth herein.

168. JOHN DOES 1-10 (fictional natural persons), are named as Defendants herein and intended to represent any individuals, whose identities are presently unknown who may have caused or contributed to the defects causing the subject injuries or may be otherwise liable to Plaintiffs for payment of damages for the negligence of others.

169. ABC CORPORATIONS 1-10 (fictional business entities), are named as Defendants herein and intended to represent any company(ies), partnership(s), corporations(s), or other business entity(ies), whose identity(ies) are presently unknown, may have caused or contributed to the defects causing the subject injuries or may be otherwise liable to Plaintiffs for payment of damages for the negligence of others.

WHEREFORE, Plaintiffs demand judgment against JOHN DOES 1-10 and ABC CORPORATIONS 1-10 for compensatory damages, costs, interest as allowed by law, and for such other relief as the Court deems just and demands a trial by jury on all issues so triable as a matter of right.

## CLAIM FOR PUNITIVE DAMAGES

170. Plaintiffs incorporate by reference paragraphs 1 – 169, as if fully set forth herein.

171. At all relevant times, Amazon and Amazon Services knew or reasonably should have known that the Subject Tabletop Fire Pit and Subject Wilteexs Fuel Bottle when used as

intended or in a reasonably foreseeable manner, presented a substantial and foreseeable risk of serious injury because of the propensity for flame jetting as alleged herein.

172. Despite that knowledge, Amazon and Amazon Services consciously failed and/or refused to refrain from selling the Subject Tabletop Fire Pit and Subject Wilteexs Fuel Bottle, issue adequate warnings or instructions, notify users, recall the product, or take other appropriate corrective action. Amazon and Amazon Services instead continued to market, distribute, and sell the Subject Tabletop Fire Pit and Subject Wilteexs Fuel Bottle, thereby exposing Plaintiffs to the known danger of flame jetting.

173. Amazon and Amazon Services' conduct was not merely negligent. It was undertaken with actual malice and/or wanton and willful disregard of persons foreseeably likely to be harmed, including Plaintiffs, as evidenced by Amazon and Amazon Services marketing, distributing, and selling the Subject Tabletop Fire Pit and Subject Wilteexs Fuel Bottle despite actual knowledge of the risk of flame jetting associated with these products when used in an expected and foreseeable manner. Moreover, Amazon and Amazon Services marketed, distributed, and sold the Subject Wilteexs Fuel Bottle (which did not have a flame arrestor) to Nashonda Clark, the minor Plaintiff's mother, in May 2025 even though the Consumer Product Safety Commission required flame arrestors on fuel bottles such as the Subject Wilteexs Fuel Bottle as of January 2023.

174. Plaintiffs therefore seek punitive damages in an amount to be determined by the trier of fact and as permitted under the New Jersey Punitive Damages Act, N.J.S.A. §§ 2A:15-5.9 through -5.17.

WHEREFORE, Plaintiffs demand judgment against Amazon and Amazon Services for compensatory damages, punitive damages, costs, interest as allowed by law, and for such other

relief as the Court deems just and demands a trial by jury on all issues so triable as a matter of right.

**JURY DEMAND**

The Plaintiffs hereby demand a trial by jury on all of the triable issues of this Complaint, pursuant to Rule 1:8-2(b) and Rule 4:35-1(a).

**DESIGNATION OF TRIAL COUNSEL**

Pursuant to Rule 4:25-4, NICK RUSSO, ESQ., is hereby designated as trial counsel for the Plaintiffs in the above matter.

**CERTIFICATION OF OTHER ACTIONS/PARTIES**

Pursuant to Rule 4:5-1, the undersigned attorney certifies to the best of my knowledge that the above captioned matter is not the subject of any other pending action in any Court or of a pending arbitration proceeding. I hereby certify that no other action or arbitration is being contemplated by the Plaintiff. Other than the parties set forth in this pleading, I know of no other parties that should be joined in the above action.

Dated: October 6, 2026

**MORGAN & MORGAN PHILADELPHIA, PLLC**
(a professional limited liability company formed in Florida) *Attorneys for Plaintiffs*

By: ***NICK RUSSO***
NICK RUSSO, ESQ.
Attorney for Plaintiff

# Civil Case Information Statement

## Case Details: CAMDEN | Civil Part Docket# L-003507-26

**Case Caption:** H., A MINOR, BY AND K. VS AMAZON.COM, INC.
**Case Initiation Date:** 10/06/2026
**Attorney Name:** NICHOLAS FRANK RUSSO
**Firm Name:** MORGAN & MORGAN LLC
**Address:** 30 MONTGOMERY ST STE 410 JERSEY CITY NJ 07302
**Phone:** 2012093416
**Name of Party:** PLAINTIFF : K. H., a minor, by and
**Name of Defendant's Primary Insurance Company** (if known): Unknown

**Case Type:** PRODUCT LIABILITY
**Document Type:** Complaint with Jury Demand
**Jury Demand:** YES - 6 JURORS
**Is this a professional malpractice case?** NO
**Related cases pending:** NO
**If yes, list docket numbers:**
**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO
**Does this case involve claims related to COVID-19? NO**

**Are sexual abuse claims alleged by: K. H., a minor, by and ? NO**

**Are sexual abuse claims alleged by: KYLE HATCH? NO**

**Are sexual abuse claims alleged by: KARINA TIMBERS? NO**

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE**

**CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION**

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
**If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
**If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO **Title 59?** NO **Consumer Fraud?** NO **Medical Debt Claim?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

10/06/2026
Dated

/s/ NICHOLAS FRANK RUSSO
Signed